Strafford,
No. 5085.

MASSACHUSETTS BONDING & INSURANCE COMPANY & a.

*v.*

BURROWS MOTOR CO., INC. & a.

Argued January 2, 1963.

Decided February 21, 1963.

418

*Burns, Bryant & Hinchey* (*Mr. Donald R. Bryant* orally), for the plaintiffs.

*Fuller & Flynn* and *Thomas M. Dudley, Jr.* (*Mr. Dudley* orally), for the defendant Maloney.

*Boynton, Waldron & Dill* (*Mr. Wyman P. Boynton* orally), for the defendant Parks.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant Employers Liability Assurance Corporation.

DUNCAN, J. The primary contentions of the plaintiffs are that the master erred in finding and ruling that title to the automobile involved in the collision had been transferred by Crisp to Burrows Motor Co., Inc., and that "actual use" of the automobile by the operator Goodwin at the time of the collision was with the permission of Burrows Motor Co., Inc. as owner.

The evidence was that Goodwin was a young man, unmarried, who was hired by Burrows Motor Co., Inc. as sales manager some three weeks before the accident, and that during the period in question in this case he was the only salesman in its employ. The company was engaged in selling DeSoto automobiles, but had only a single DeSoto in stock, which was used as a demonstrator by Miles Burrows, who "operated" the company as president and treasurer. The company also had some twelve to fourteen used cars in stock, which were admittedly subject to Goodwin's use in the business, and to go back and forth to his residence in Newington.

There was evidence that prior to February 17, 1959 Goodwin approached Crisp, with whom he had prior business contacts, to negotiate a sale of a new DeSoto by which he proposed to

take Crisp's 1958 Dodge in trade. According to the testimony of Crisp, agreement was reached on February 17, 1959 that Crisp would purchase a 1959 DeSoto, turning in his Dodge, the net price to be represented by monthly payments of a specified amount over a specified number of months. Crisp testified and the master found that written contracts were then prepared, consisting of a purchase order, a conditional sales contract, and a bank credit statement, which were signed or initialed by Crisp. The master found that "the negotiations were consummated. Crisp ordered a new 1959 DeSoto Adventurer. Goodwin agreed to take in the Dodge as part payment." He also found and ruled that in "taking possession and title Goodwin was acting within his authority as sales manager."

Burrows denied any knowledge of these transactions before the accident and testified that any sales by Goodwin were subject to his approval of the "difference" between the sale price and the allowance. Of the papers which Crisp testified were executed, Burrows testified that only the credit statement came to his attention, when it was found following the accident on a desk in the garage. Crisp however testified that he saw his conditional sales contract in the same location following the accident. Burrows acknowledged that he knew that negotiations were under way, and that he saw Crisp and his Dodge automobile at the garage on February 21 and 22. He admitted that he knew that "a deal had been consummated," although he claimed that he had not accepted it.

Crisp testified that pursuant to his understanding with Goodwin he left his Dodge automobile at the garage on February 21, with Maine license plates attached, after Goodwin had told him that he wished to show it to a prospective purchaser. Goodwin furnished him with a used car with dealer's plates to use pending delivery of a new DeSoto the following week. At some time thereafter dealer's plates were substituted for Crisp's registration plates on the Dodge and a decal sticker bearing the name of Burrows garage was affixed to the trunk. There was evidence that this was done before the evening of Saturday, February 21. On the evening of Sunday, February 22, Goodwin, driving the Dodge, called for Maloney and Parks at their respective residences. Parks was to report to the garage on the following day as a part-time salesman on commission. Maloney understood originally

that he and Goodwin were to examine a used car Goodwin was "trying to trade." However the three men proceeded to Revere, Massachusetts on what the master found was purely a social occasion. The accident occurred in the early hours of Monday, February 23, 1959, when the group was returning from Revere.

The plaintiffs excepted to the master's finding and ruling that "upon [Burrows Motor Co., Inc.] taking possession of the car title passed to it" and that "in so taking possession and title Goodwin was acting within his authority as sales manager for Burrows Motor Co., Inc." It is the plaintiffs' contention that the evidence compelled a finding that title to the Dodge was not intended to pass until a new DeSoto should become available for delivery to Crisp and a conditional sales agreement between Crisp and a Portsmouth bank with respect to the Dodge could be discharged. It is their further contention that since Burrows testified that his approval of the terms had not been given, it could not properly be found that Goodwin had authority to take possession of and title to the Dodge.

At the outset it may be noted that Burrows' testimony in this respect was belied by his conduct following the accident. He then made no demand for return of the used car which had been furnished Crisp by Goodwin pending delivery of a DeSoto, but in fact furnished him with another used car in substitution for the first one. He testified that he followed this course because he "was trying to hold on to him as a customer." Crisp testified that following the accident Burrows promised to deliver the new car as soon as possible.

While no sale of cars had previously been made by Goodwin during his employment, there was no evidence that any specific restriction had been placed upon his authority with respect to used cars, which he was free to use and did use for transportation and to demonstrate to prospective purchasers.

The master could disbelieve Burrows' testimony concerning the limitations placed upon Goodwin with respect to prices, as well as his assertion that he was ignorant of the nature of the transaction between Goodwin and Crisp. From the testimony of Crisp he could and in substance did find that Crisp intended to transfer his equity in the Dodge to Burrows Motor Co., Inc. when he delivered the Dodge to Goodwin at the garage. He could likewise find that the necessary papers relating to the sale were

executed, and delivered to Burrows' place of business. From the evidence concerning the manner in which the Dodge was dealt with after its delivery to the garage, the master could properly find, despite Burrows' contrary assertion, that Goodwin did in fact have implied authority to take delivery of the Dodge, and did so openly, with Burrows' knowledge and tacit approval.

The finding that Goodwin accepted transfer of title from Crisp, and that his authority extended to such acceptance, was similarly warranted, regardless of what Goodwin's authority may have been with respect to transfer of title to a new car to Crisp had one become available. While disbelief of Burrows' testimony that his prior approval was required for a sale did not warrant a finding of Goodwin's authority to sell, the other evidence did, at least as it related to the used car. Any limitation upon Goodwin's authority not shown to have been communicated to him could not render ineffective conduct on his part within the scope of the authority which he otherwise could be found to have.

On the issue of whether Goodwin had permission of Burrows Motor Co. Inc., as the owner of the Dodge, to make the "actual use" which was being made when the accident occurred the master found as follows: " . . . he had the general right to use cars on the lot with the exception of the demonstration car. Miles Burrows knew that he was using such other cars and testified that he had a right to use them. There was no specific limitation that such use was limited to business uses . . . It is found that Goodwin's operation of the car at the time of the accident was with the permission of Burrows Motor Co., Inc."

These findings and rulings depend for their validity upon facts as to which the findings of the master are final. While Burrows testified in substance that Goodwin was not authorized to use used cars for his personal use, the evidence did not compel a finding that Goodwin was so instructed. From the evidence as a whole we think that the master could properly find that the use being made of the automobile when the accident occurred was impliedly if not expressly a permitted use. *Standard &c. Ins. Co. v. Gore,* 99 N. H. 277.

Another argument advanced by the plaintiffs is that the master erred when he ruled that they were "not relieved of liability under their respective policies by reason of the failure to have writ in the Maloney action forwarded to them." The writ referred to

was brought by Maloney against the defendant administrator. The plaintiffs' petition was filed on September 20, 1960, and thereafter amended to allege that "no notice of" the writ in the action against the administrator brought by Maloney "on July 27, 1960," and returnable in Rockingham County on the first Tuesday of September 1960 "was ever given to either" of the plaintiffs.

The policies issued by the plaintiffs each contain a provision that in the event of suit the insured "shall immediately forward to the company every . . . summons or other process received by him or his representative." The defendant administrator received the process in the Maloney suit by service of the writ on July 25, 1960. The master found that both plaintiffs investigated the accident after its occurrence, and later learned from counsel that suit would be brought. He found that they were not prejudiced by the failure to forward the writ to them, and ruled that they were not relieved of liability thereby.

The plaintiffs assert that compliance with the conditions of their policies is a condition precedent to coverage thereunder by virtue of holdings of this court exemplified by *Malloy v. Head*, 90 N. H. 58. The defendant Maloney may not rely on cases such as *Farm Bureau Ins. Co. v. Martin*, 97 N. H. 196 to justify the master's ruling since section 16 of the Financial Responsibility Act expressly limits its application "to accidents which occur in New Hampshire." RSA 268:16.

We are of the opinion however that the ruling was correct under the circumstances of this case. There is no issue of lack of notice of the accident which was the subject of decision in *Malloy v. Head, supra*. Since the reasons for that decision are inapplicable its rule should not be invoked in this case. As was pointed out in *Ward v. Casualty Co.*, 71 N. H. 262, the requirement that any writ be forwarded to the insurer is in some respects secondary to the requirement of notice of the accident. " . . . a delay of weeks in giving notice of the commencement of . . . suit against the plaintiffs might not prejudice the defendants in preparing for a defence of the action, while a much shorter delay in giving notice of the accident might prevent them from ascertaining the truth about it." *Ward v. Casualty Co., supra*, 267.

When the plaintiffs filed their petition on September 20, 1960 they served formal notice on both Maloney and the administrator

Goodwin that they denied coverage for the accident upon the grounds that Goodwin had been "unlawfully in possession" of the vehicle involved in the accident, and had been operating it without the permission of its owner. The plaintiffs are thereby estopped to claim that the administrator should have notified them of the Maloney suit when they had formally disclaimed coverage upon independent grounds. *Bowen* v. *Casualty Co.*, 99 N. H. 107. He was not required to perform a meaningless act.

The plaintiffs' further contentions require no extended consideration. Massachusetts Bonding & Insurance Company is not entitled in this proceeding to a decree that judgment be entered for the defendant in the law action brought by Maloney against Burrows Motor Co., Inc., since that action was not before the master. They contend that the case before us should be remanded for the purpose of requiring express rulings by the master on their requests for findings of fact and rulings of law. While this court has decried the practice of stating that requests not consistent with findings and rulings made are denied (*Lynch* v. *Grundy*, 98 N. H. 282), the failure of the master to follow the preferred practice in this case does not require that it be remanded for that reason alone. Requests not expressly granted may be deemed to have been denied, and the plaintiffs' exceptions appear to have been taken upon that assumption.

*Exceptions overruled.*

All concurred.